**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN J. FERRERA, | : | CIVIL NO. 1:24-cv-01339 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

## I.  Introduction.

In this social security action, Plaintiff Stephen J. Ferrera ("Ferrera") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income under Title XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1* to *9-7.*[2]  On December 8, 2021, Ferrera filed an application for supplemental security income, alleging that he has been disabled since December 31, 2004, when he was 19 years old. *See Admin. Tr.* at 228–34.  After the Commissioner denied his claim at the initial and reconsideration levels of administrative review, *id.* at 56–62, 64–70, Ferrera requested an administrative hearing, *id.* at 98–101.  On October 26, 2023, Ferrera—who was represented by an attorney, Barbara Feudale—as well as a vocational expert testified at a hearing before Administrative Law Judge Daniel Balutis (the "ALJ"). *Id.* at 38–54.  On December 14, 2023, the ALJ denied Ferrera's claim for benefits. *Id.* at 19–31.  Ferrera appealed the ALJ's decision to the Appeals Council, *id.* at 8–11, which denied his request for review. *Id.* at 1–4.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On August 8, 2024, Ferrera, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claim. *Doc. 1.*  He contends that the Commissioner's decision is not supported by

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Ferrera's claims.

substantial evidence. *Id*. at 1.  And he requests that the court award him benefits or, in the alternative, remand the case for a new hearing. *Id*. at 1.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7.*  The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs.8, 9.*  The parties filed briefs (*see docs. 10, 12*), and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Ferrera is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age,

education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On May 22, 2023, the ALJ denied Ferrera's claim for benefits. *Admin. Tr.* at 19–31. He proceeded through the five-step sequential-evaluation process.

### A. Step One.

At step one of the sequential-evaluation process, the ALJ found that Ferrera had not engaged in substantial gainful activity since December 8, 2021, the date he filed his application for benefits. *Id.* at 21.

7

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Ferrera had the following severe impairments: learning disability; unspecified anxiety disorder; and unspecified depressive disorder. *Id*.

The ALJ also found that Ferrera had non-severe medically determinable impairments which "establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity." *Id.*  Specifically, the ALJ found that Ferrera had hyperglycemia, hyperlipidemia, and vitamin D deficiency which "have been managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." *Id.*  Nevertheless, the ALJ "considered all of [Ferrera's] medically determinable impairments, including those that are not severe, when assessing [his] residual functional capacity." *Id.* at 22.

The ALJ also found that "intellectual disability is not a medically determinable impairment due to a lack of objective evidence." *Id.* at 22.  The ALJ reasoned that "there is no objective evidence to establish intellectual disability as a medically determinable impairment." *Id.*  The ALJ cited to primary care records which reflect a series of telephone calls with a primary care doctor, Amy Wetzel Doolan, DO ("Dr. Doolan"). *Id.* (citing *id.* at 935–36).  In these phone calls,

Ferrera's "caretaker" requested a referral to a neurologist but failed to explain why she sought this referral. *Id.* at 935. Accordingly, Dr. Doolan noted that she "was not sure why [Ferrera] wanted to see this provider[,] so [she] put intellectual disability in for the reason." *Id.*; *see also id.* at 22. The ALJ also cites Dr. Doolan's comment in the records that "[Ferrera] has known learning disability but that is all I know about him; I have no other work up regarding diagnosis[] as he is new to me.'" *Id.*

### C. Step Three.

At step three of the sequential-evaluation process, the ALJ found that Ferrera did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 22–25. Specifically, the ALJ considered Listing 12.04 (Depressive bipolar and related disorders), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). *Id.*

In considering Listings 12.04, 12.05, 12.06, and 12.11, the ALJ considered the four broad areas of mental functioning set forth in the disability regulations for

evaluating mental disorders[3] and in the listings, known as the paragraph B criteria,[4] and he determined that Ferrera had moderate limitations in each area. *Id*. at 22–24. The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Id*. at 24. The RFC, however, is "used at steps 4 and 5 of the sequential evaluation process" and "requires a more detailed assessment of the areas of mental functioning." *Id*. The ALJ also asserted that the RFC assessment

---

[3] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. § 416.920a. As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at § 416.920a(c)(3). A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id*. at § 416.920a(c)(4). The ratings in these four broad functional areas are used at step two to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id*. at § 416.920a(d).

[4] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2. Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F.R. § 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F. This is what the ALJ is referring to when he refers to the paragraph B criteria.

that followed "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.*

The ALJ also considered the paragraph C criteria for listings 12.04 and 12.06, but he found that "the evidence failed to establish the presence of the 'paragraph C' criteria." *Id.* He based this decision on a lack of evidence that Ferrera "experiences marginal adjustment" as required for the paragraph C criteria. *Id.* Marginal adjustment is "minimal capacity to adapt to changes in environment or to demands that are not already part of daily life." *Id.* The ALJ cited Ferrera's daily activities and the finding of the State psychological consultants in coming to this conclusion. *Id.*

The ALJ provided further analysis regarding listing 12.05, intellectual disorder. *Id.* at 24–25. The ALJ considered the paragraph A and paragraph B requirements but found that neither were met in Ferrera's case. *Id.* Specifically, the ALJ found that the paragraph A requirements were not met "because the record does not show an inability to function at a level required to participate[] in standardized testing of intellectual functioning, as the claimant has done so on at least two occasions" and because "the record does not show significant deficits in adaptive functioning, as the claimant is not dependent upon others for his personal needs." *Id.* at 25. As to the paragraph B requirements, the ALJ held that "these

requirements are not met because . . . the claimant's mental conditions result in no more than moderate mental functioning limitations." *Id.*

### D.  The RFC.

The ALJ then determined that Ferrera had the RFC to do a full range of work "with certain nonexertional limitations." *Id.* at 25.  He concluded that Ferrera could "perform simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work)." *Id.* at 25–26.  He also concluded that Ferrera "is able to perform simple work-related decisions[,]" "able to interact with coworkers and the public occasionally[,]" and "able to tolerate a few changes in a routine work setting defined as occasional changes in routine work setting." *Id.* at 26.  And the ALJ found that Ferrera "is limited to superficial verbal interaction." *Id.*

In making this RFC assessment, the ALJ considered Ferrera's testimony and assertions regarding his limitations, Ferrera's medical records and treatment notes, his activities of daily living, and the statements of Ferrera's cousin who provided a third-party function report. *Id.* at 26–30.   He also considered the medical opinions on record, including the State agency psychological consultants at the initial and reconsideration levels (whose opinions he found persuasive) and a "consultative mental status and intelligence evaluator" (whose opinion he also found to be persuasive).

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Ferrera had no past relevant work. *Id*. at 30.

### F.  Step Five.

At step five of the sequential-evaluation process, considering Ferrera's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as yard laborer, vine pruner, and street sweeper—that exist in significant numbers in the national economy that Ferrera could perform. *Id*. at 120.

***

In sum, the ALJ concluded that Ferrera has not been disabled since December 8, 2021 (which is the date he filed his application). *Id*. at 31.  Thus, he denied Ferrera's claim for benefits. *Id*.

## V.  Discussion.

Ferrera argues that the ALJ erred in two respects: (1) he failed to find that Ferrera's conditions "meet or medically equal Social Security Listing 12.05, Intellectual disorder"; and (2) he failed to give "proper consideration" to two doctors' findings which supported the conclusion that Ferrera has "severe

13

cognitive deficits and an intellectual disorder[.]" *Doc. 10* at 2–3.  The
Commissioner argues the ALJ did not err. *Doc. 12*.

According to Ferrera, the ALJ "first erred in finding that Intellectual
Disability is not a medically determinable impairment due to lack of objective
evidence[.]" *Doc. 10* at 6.  Ferrera attributes this supposed error to the ALJ's
failure to properly consider his education records, the medical opinion of Leah
Bielski, Psy.D. ("Dr. Bielski"), and the report of Randy Lee Fulton, Psy.D. ("Dr.
Fulton"). *Id.* at 6–11.  And, according to Ferrera, because the ALJ did not find his
intellectual disability to be a medically determinable impairment, the ALJ further
erred by not finding that Ferrera's impairments satisfied Listing 12.05. *Id.* at 6, 11.
Ferrera's second argument also boils down to whether the ALJ properly considered
Dr. Fulton's report. *See id.* at 11–13.

The Commissioner, however, argues that the ALJ did not err, and,
accordingly, his decision should be upheld. *See generally doc. 12*.  Per the
Commissioner, because the ALJ found Ferrera's learning disorder to be a severe
impairment and "continued to address [Ferrera's] intellectual functioning
throughout the decision[,]" there was no error in finding that Ferrera's intellectual
disability was not medically determinable. *Id.* at 9–11.  In other words, the
Commissioner argued that the ALJ did not err in step two. *See id.*

The Commissioner also argues that substantial evidence supports the ALJ's step three finding, because he adequately explained how Ferrera failed to meet the paragraph A and paragraph B criteria for Listing 12.05. *See id.* at 13–18. Moreover, per the Commissioner, Ferrera waived any argument of error in the crafting of the RFC. *Id.* at 19.  As to Ferrera's argument that "the ALJ inadequately considered Dr. Fulton's report and only mentioned it in the RFC narrative[,]" the Commissioner pointed out each time Dr. Fulton's report was cited in the ALJ's opinion. *Id.* at 19–20.  The Commissioner asserts that "the ALJ fully considered the relevant findings . . . including those of Dr. Fulton" and points out the distinction between "consideration of evidence and articulation of how the evidence was considered." *Id.* at 20–21.

The Commissioner also stated that "Dr. Fulton did not opine about what [Ferrera] could still do despite his impairment; rather, he set forth test results." *Id.* at 20 (internal citations to the record omitted).  As support for this statement, the Commissioner cites the Code of Federal Regulations' definition of medical opinion: "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restricted in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section." 20 C.F.R.

§ 416.913(a)(2).  Ferrera did not provide counterargument describing Dr. Fulton's report as a medical opinion. *See docket generally* (reflecting lack of reply brief).

### A.  To the extent the ALJ erred at step two, such error was harmless.

At step two, the ALJ found that Ferrera had three severe impairments: learning disability; unspecified anxiety disorder; and unspecified depressive disorder. *Admin. Tr.* at 21.  The ALJ did not find intellectual disability to be a severe impairment of because he did not find that there was objective evidence of intellectual disability as a medically determinable impairment. *Id.* at 22.  Ferrera argues that this was error because the ALJ failed to properly evaluate the medical evidence, specifically Ferrera's education records and the evaluations performed by Dr. Bielski and Dr. Fulton which all support an intellectual disability diagnosis. *See doc. 10* at 7–11.  The Commissioner argues there is no error here because the ALJ proceeded to steps three through five. *Doc. 12* at 10–11.

Both Dr. Fulton's report[5] and Dr. Bielski's medical opinion[6] diagnose Ferrera with intellectual disability or the connected diagnosis of "unspecified

---

[5] Dr. Fulton performed a neuropsychological evaluation and produced a report setting forth the results thereof. *Admin. Tr.* at 1141–59.  In his report, Dr. Fulton stated that his evaluation "support[ed] a diagnosis of Intellectual Disability[.]" *Id.* at 1144.

[6] Dr. Bielski reviewed records and conducted an examination and produced a medical opinion. *Admin. Tr.* at 917–25.  In this medical opinion, she lists the

neurodevelopmental disorder". *See Admin. Tr.* at 917–25, 1141–59.  But the ALJ

did not cite either Dr. Bielski's medical opinion or Dr. Fulton's report in the step

two analysis. *Admin. Tr.* at 21–22.  Instead, the ALJ stated that "there is no

objective evidence to establish intellectual disability as a medically determinable

impairment" and quoted the primary care record which indicated a lack of

familiarity with Ferrera and, accordingly, no knowledge of a diagnosed intellectual

disability. *Id.* at 22.  The ALJ thus erred by seemingly rejecting Dr. Bielski's

medical opinion and Dr. Fulton's report at step two without explanation. *Cf*

*Schaudeck*, 181 F. 3d at 433 (explaining that the ALJ must "indicate in his decision

which evidence he has rejected and which he is relying on as the basis for his

finding").

    But the ALJ still analyzed Ferrera's intellectual disability at steps three and

four and while crafting the RFC. *See id.* at 22–31.  Where an ALJ finds in the

applicant's favor at step two by finding some other severe medical condition,

"even if he had erroneously concluded that some of [his] impairments were non-

severe, any error was harmless." *Salles v. Commissioner of Social Sec.*, 229 Fed.

Appx. 140, 145 n.2 (3d Cir. 2007).  Here, the ALJ found the absence of a

medically determinable impairment at step two, without explaining how he

---

following diagnoses: unspecified neurodevelopmental disorder (with an IQ of 67
which is "in the extremely low range"), unspecified anxiety disorder, and
unspecified depressive disorder. *Id.* at 921.

considered Dr. Bielski's medical opinion and Dr. Fulton's report. But, similar to when an ALJ erroneously concludes that an impairment was non-severe, this was harmless because the ALJ still analyzed Ferrera's intellectual disability throughout the remaining steps, citing the records that were seemingly ignored at step two. Accordingly, we will not remand on the basis of error at step two.

### B. Substantial evidence supports the ALJ's conclusion that Ferrera did not have a condition or combination of conditions that meet or medically equal Listing 12.05.

At step three, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, and 12.11." *Admin. Tr.* at 22. Ferrera argues that the ALJ erred in not finding that he had impairments that meet or medically equal Listing 12.05. *Doc. 10* at 4–12. As to Listing 12.05, the ALJ examined both the Paragraph A and Paragraph B criteria, noting that to find either set of criteria satisfied is to find "[t]he required level of severity for this disorder[.]" *Id.* at 24–25.

The ALJ found that Ferrera did not satisfy the Paragraph A criteria because "the record does not show an inability to function at a level required to participate[] in standardized testing of intellectual functioning, as the claimant has done so on at least two occasions." *Id.* at 25. In finding so, the ALJ cited to Dr.

18

Fulton's report and Dr. Bielski's medical opinion which were seemingly omitted from consideration at step two. *Id.* (citing *Admin. Tr.* at 917–25, 1141–59). The ALJ also found that "the record does not show significant deficits in adaptive functioning, as the claimant is not dependent upon others for his personal needs." *Id.* In reaching this conclusion, the ALJ cited to the hearing testimony and the function report Ferrera completed. *Id.* (citing *Admin. Tr.* at 38–54, 270–78).

Turning to the Paragraph B criteria, the ALJ found that "these requirements are not met because . . . the claimant's mental conditions result in no more than moderate mental functioning limitations." *Id.* at 25. The Paragraph B criteria require "an extreme limitation of one, or marked limitation of two," of the following categories: "understanding, remembering, or applying information"; "interacting with others"; "concentrating persisting, or maintaining pace"; and "adapting or managing oneself" ("the four categories"). *See* Listing 12.05 ¶ B. The ALJ found that Ferrera had only moderate limitations in each of the four categories. *Id.* at 22–24. When explaining these findings, the ALJ cites, among other portions of the record, Dr. Bielski's medical opinion (*id.* at 916–31), and Dr. Fulton's report (*id.* at 1141–59). *Id.*

Ferrera argues that the ALJ "failed to properly evaluate the . . . medical evidence of record[,]" and, if he had, the ALJ would have concluded that Ferrera's "conditions meet or medically equal Social Security Listing 12.05[.]" *Id.*

Specifically, according to Ferrera, the ALJ failed to cite Dr. Bielski's medical opinion and Dr. Fulton's report.[7] *Doc. 10* at 6–11.

The ALJ cites Dr. Bielski's medical opinion throughout his step three analysis, citing it as support for each finding of moderate limitation. *See Admin. Tr.* at 22–24. The ALJ also analyzes Dr. Bielski's medical opinion for its supportability and consistency. *Id.* at 29. The ALJ ultimately found Dr. Bielski's medical opinion to be persuasive and supportive of "moderate mental functioning limitations" in the RFC. *Id.*

The ALJ also cites Dr. Fulton's report throughout his step three analysis, citing it as support for each finding of moderate limitation. *See id.* at 22–24. The ALJ also relied on Dr. Fulton's report when crafting the RFC. *Id.* at 27. Specifically, the ALJ stated that "the record shows the claimant presented for a neuropsychological evaluation with Randy Lee Fulton, Psy.D., in June 2023, with his test score[] showing extremely low general intellectual functioning, low math computation, extremely low attention and processing speed, impaired language and visual-perceptual and spatial, and low executive functions." *Id.* (internal citations omitted). The ALJ did not, however, assess Dr. Fulton's report for its

---

[7] Ferrera also argues that the ALJ failed to properly consider the educational records in the record, but he only proffers this argument as it relates to the ALJ's error at step two. *See doc. 10* at 6–8. As we explain above, however, such error is harmless. Accordingly, we do not further address this argument.

supportability and consistency as would be required for a medical opinion. *See id.* at 19–31.

The Commissioner argued that Dr. Fulton's report is not a medical opinion. *Doc. 12* at 20. Upon review of the definition of medical opinion, and Dr. Fulton's report, we conclude that the Commissioner is correct. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restricted in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section." 20 C.F.R. § 416.913(a)(2). Dr. Fulton's report summarizes his assessment of Ferrera. In the section titled "Impressions," Dr. Fulton diagnoses Ferrera with an intellectual disability, and notes that "[i]ndividuals with intellectual disability and this level of general intellectual ability may" have certain limitations. *Admin. Tr.* at 1144–45. When speaking of Ferrera specifically, Dr. Fulton says that "he will require significant assistance with all higher level/instrumental activities of daily living[,]" but does not provide any activities he may be able to do despite his impairment or analyze his capabilities in regards to the abilities listed in 20 C.F.R. § 416.913 paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F). *Id.* at 1141–59. Accordingly, Dr. Fulton's report does not satisfy the definition of a medical opinion and, as such, the

ALJ need not evaluate its persuasiveness, as required for medical opinions.[8] *Cf*

*Ludwig v. Kijakazi*, No. 1:20-CV-01820, 2022 WL 264543, *5 (M.D. Pa. Jan. 27,

2022) ("the record reflects that such records are treatment records, not medical

opinions as defined in the applicable regulations, and the ALJ was not required to

evaluate their persuasiveness").

As we explained in the Standards section above, the ALJ must provide "a

clear and satisfactory explication of the basis on which" his decision rests. *Cotter

v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  More specifically, in his opinion the

ALJ must "indicate in his decision which evidence he has rejected and which he is

relying on as the basis for his finding[,]" *Schaudeck*, 181 F. 3d at 433, and "may

not reject pertinent or probative evidence without explanation[,]" *Johnson*, 529

F.3d at 204.

Ferrera states that he "disagrees" with the ALJ's conclusion that he is not

disabled because he does not satisfy the Listing 12.05 requirements. *Doc. 10* at 5,

---

[8] The ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id.*  The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(a).  As such, the ALJ must specifically explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. *Id.*

12.  But "we must not substitute our own judgment" or that of the plaintiff "for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).  The ALJ explained his reasoning in finding that Ferrera does not satisfy the requirements for Listing 12.05.  In doing so, he did not "fail[] to properly evaluate [Ferrera's] medical evidence of record." *See doc. 10* at 4.  Accordingly, we conclude that substantial evidence supports the ALJ's findings at step three.

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge